United States Court of Appeals,

Fifth Circuit.

No. 97-30592

Summary Calendar.

Shirley MARSHALL, Individually and on behalf of Nydia MARSHALL, Plaintiff-Appellant,

v.

EAST CARROLL PARISH HOSPITAL SERVICE DISTRICT, doing business as East Carroll Parish Hospital, Defendant-Appellee.

Feb. 9, 1998.

Appeal from the United States District Court for the Western District of Louisiana.

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Simply put, this appeal concerns the effect to be given an affidavit filed in opposition to a motion for summary judgment. Shirley Marshall, individually and on behalf of her minor daughter, Nydia Marshall, contests the summary judgment granted East Carroll Parish Hospital Service District (the Hospital), dismissing her action, brought under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. We AFFIRM.

I.

Fifteen-year-old Nydia Marshall was brought by ambulance to the Hospital's emergency room on 18 October 1994, because she "wouldn't move" while at school after the bell rang. Upon her arrival, Hospital personnel took her history and vital signs. She was unable to verbally communicate while at the emergency room, but cooperated when removing her clothing and watched movement of

1

persons coming in and out of the emergency room. She was examined by Dr. Marc Horowitz, who also had several medical tests performed on her.

Dr. Horowitz diagnosed Nydia Marshall as having a respiratory infection and discharged her. He informed Shirley Marshall that her daughter's failure to communicate was of unknown etiology, and advised her to continue administering the medications which had been prescribed by the family doctor on the previous day and to return to the emergency room if the condition deteriorated. The complaint alleged that, later that same day, Nydia Marshall's symptoms continued to worsen, and she was taken to the emergency room at a different hospital, where she was diagnosed as suffering from a cerebrovascular accident consistent with a left middle cerebral artery infarction.

This action claimed that the Hospital violated EMTALA by failing to provide Nydia Marshall with an appropriate medical screening examination and failing to stabilize her condition prior to discharge. The Hospital moved for summary judgment and submitted supporting affidavits from Dr. Horowitz and a registered nurse who had participated in Nydia Marshall's treatment in the Hospital's emergency room.

The district court allowed Marshall three months in which to conduct discovery necessary to respond to the motion. In opposition to that motion, Marshall submitted a statement of contested facts and the sworn affidavit of Lena Middlebrooks, a licensed practical nurse, who had been on duty at the Hospital

2

emergency room when Nydia Marshall was treated.

The district court granted summary judgment for the Hospital on the ground that no material fact issues were in dispute.

## II.

Marshall contends that Middlebrooks' affidavit created a genuine issue of material fact. Of course, we review a grant of summary judgment *de novo*. *E.g., Green v. Touro Infirmary,* 992 F.2d 537, 538 (5th Cir.1993).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *e.g., Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Along this line, the evidence, and the inferences to be drawn from it, are viewed in the light most favorable to the non-movant. *E.g., LeJeune v. Shell Oil Co.,* 950 F.2d 267, 268 (5th Cir.1992). And, if the movant meets the initial burden of showing that there is no material fact issue, the burden shifts to the non-movant to produce evidence or set forth specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); *e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The Act provides in relevant part:

> In the case of a hospital that has a hospital emergency department, if any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the

3

hospital must provide for *an appropriate medical screening examination* within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

42 U.S.C. § 1395dd(a) (emphasis added). The Act defines an "emergency medical condition", in pertinent part, as

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,

(ii) serious impairment to bodily functions, or

(iii) serious dysfunction of any bodily organ or part....

42 U.S.C. § 1395dd(e)(1). And, if the hospital determines that the individual has an "emergency medical condition", then

the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility....

42 U.S.C. § 1395dd(b)(1).

Marshall contends that Middlebrooks' affidavit demonstrates that Hospital personnel knew that Nydia Marshall had an emergency medical condition and were very concerned about the cursory examination provided by Dr. Horowitz; that Dr. Horowitz should have performed a fundoscopic examination, cranial nerve testing, motor strength testing, and deep tendon reflex testing; and that

4

Nydia Marshall should have been admitted to the Hospital for observation of her unexplained altered mental status. In essence, Marshall is contending that Dr. Horowitz committed malpractice in failing to accurately diagnose an emergency medical condition.

We agree with the other courts which have interpreted EMTALA that the statute was not intended to be used as a federal malpractice statute, but instead was enacted to prevent "patient dumping", which is the practice of refusing to treat patients who are unable to pay. *See Summers v. Baptist Med. Center Arkadelphia,* 91 F.3d 1132, 1136-37 (8th Cir.1996) (en banc); *Vickers v. Nash General Hosp., Inc.,* 78 F.3d 139, 142 (4th Cir.1996); *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1192 (1st Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996); *Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1255, 1258 (9th Cir.1995); *Urban By and Through Urban v. King,* 43 F.3d 523, 525 (10th Cir.1994); *Holcomb v. Monahan,* 30 F.3d 116, 117 & n. 2 (11th Cir.1994); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1038-39 (D.C.Cir.1991); *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 268, 272 (6th Cir.1990).

Accordingly, an EMTALA "appropriate medical screening examination" is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms. *See Summers,* 91 F.3d at 1138; *Vickers,* 78 F.3d at 143; *Correa,* 69 F.3d at 1192-93; *Repp v. Anadarko Mun. Hosp.,* 43 F.3d 519, 522 (10th Cir.1994); *Holcomb,* 30 F.3d at 117. If the

5

Hospital provided an appropriate medical screening examination, it is not liable under EMTALA even if the physician who performed the examination made a misdiagnosis that could subject him and his employer to liability in a medical malpractice action brought under state law. *See Eberhardt,* 62 F.3d at 1258 ("The hospital's failure to detect the decedent's alleged suicidal tendency may be actionable under state medical malpractice law, but not under the EMTALA."); *Baber v. Hospital Corp. of America,* 977 F.2d 872, 879-80 (4th Cir.1992) ("Questions regarding whether a physician or other hospital personnel failed properly to diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery."); *Gatewood,* 933 F.2d at 1039 ("In the absence of any allegation that the [hospital] departed from its standard emergency room procedures in treating [patient], questions related to [patient's] diagnosis remain the exclusive province of local negligence and malpractice law."). Therefore, a treating physician's failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening. *See Summers,* 91 F.3d at 1138-39 (" 'faulty' screening ... does not come within EMTALA"); *Vickers,* 78 F.3d at 143-44 (citation omitted) (EMTALA "does not impose any duty on a hospital requiring that the screening result in a correct diagnosis").

In order to avoid summary judgment, Marshall was required to

6

present evidence showing a material fact issue as to whether the Hospital provided an EMTALA appropriate medical screening examination. But, an "appropriate medical screening examination" is not defined by EMTALA. Most of the courts that have interpreted the phrase have defined it as a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms. *See Summers,* 91 F.3d at 1138 ("An inappropriate screening examination is one that has a disparate impact on the plaintiff"); *Vickers,* 78 F.3d at 144 (emphasis in original) ("EMTALA is implicated only when individuals who are *perceived* to have the same medical condition receive disparate treatment"); *Correa,* 69 F.3d at 1192 ("The essence of this requirement is that there be some screening procedure, and that it be administered even-handedly."); *Eberhardt,* 62 F.3d at 1258 (hospital did not fail to provide "appropriate medical screening examination" where there was no "evidence to show that the screening provided ... was not comparable to that provided to other patients who manifested similar symptoms"); *Repp,* 43 F.3d at 522 ("a hospital violates section 1395dd(a) when it does not follow its own standard [screening] procedures"); *Williams v. Birkeness,* 34 F.3d 695, 697 (8th Cir.1994) (plaintiffs must prove that hospital treated patient "differently from other patients"); *Holcomb,* 30 F.3d at 117 (EMTALA "only requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient"); *Baber,* 977 F.2d at 878 ("EMTALA only requires hospitals to apply their standard screening procedure for

7

identification of an emergency medical condition uniformly to all patients"); *Gatewood,* 933 F.2d at 1041 ("the Act is intended not to ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to patients in similar medical circumstances"); *Cleland,* 917 F.2d at 268-69 ("we interpret the vague phrase "appropriate medical screening' to mean a screening that the hospital would have offered to any paying patient").[*] It is the plaintiff's burden to show that the Hospital treated her differently from other patients; a hospital is not required to show that it had a uniform screening procedure. *Williams v. Birkeness,* 34 F.3d at 697.

The affidavits of Dr. Horowitz and Nurse Green, submitted by the Hospital as part of its evidence in support of summary judgment, both state that Nydia Marshall was given an appropriate medical screening examination that would have been performed on any

---

[*]The Sixth Circuit also requires proof of an improper motivation on the part of the hospital. *See Roberts v. Galen of Virginia, Inc.,* 111 F.3d 405, 409 (6th Cir.1997) ("To distinguish an EMTALA claim from a state law claim for negligence, a plaintiff must establish something more than a hospital's breach of the applicable standard of care"; "plaintiff [has] a burden to bring forth some showing of improper motivation"); *Cleland,* 917 F.2d at 272 (" "Appropriate' " refers to "the motives with which the hospital acts"). And, some courts have added the requirement that the examination be one that is reasonably calculated to identify an emergency medical condition. *See Correa,* 69 F.3d at 1192 ("A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients"); *Eberhardt,* 62 F.3d at 1257, 1258 (emphasis in original) ("a medical screening examination is "appropriate' if it is designed to identify *acute* and *severe* symptoms that alert the physician of the need for *immediate* medical attention to prevent serious bodily injury").

other patient and that she was not diagnosed as having an emergency medical condition. Marshall contends that both of these assertions were refuted by Middlebrooks' affidavit. In her affidavit, Middlebrooks stated that she witnessed a disagreement between Nurse Arrington and Dr. Horowitz over whether Marshall should be admitted or transferred to another hospital, rather than discharged, and that, during her 14-year employment at the Hospital, she had seen several other patients with symptoms similar to Nydia Marshall's, who had all been admitted for observation and further testing and treatment.

The Hospital moved to strike portions of Middlebrooks' affidavit on the grounds that it contained inadmissible hearsay, conjecture, and speculation and was not made on the basis of her personal knowledge. The district court granted that motion as to any information, "if any there be", in the affidavit which did not comply with FED. R. CIV. P. 56(e) (requiring affidavits to be made on personal knowledge, to set forth facts which would be admissible in evidence, and to show affirmatively that affiant is competent to testify to the matters stated therein). In any event, the court considered the entire affidavit when ruling on summary judgment.

Considering that Middlebrooks is a licensed practical nurse, not a doctor, we question whether she is competent to compare the symptoms and treatment of Nydia Marshall to other patients. *See Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 858 (4th Cir.1994) (emphasis added) (where hospital offers evidence that "patient was accorded the same level of treatment that all other patients

9

receive, or that a test or procedure was not given because the physician did not believe that the test was reasonable or necessary under the particular circumstances of that patient", plaintiff may "challenge the medical judgment of the physicians involved through her own *expert medical testimony* "); *Baber,* 977 F.2d at 882 (patient's brother, who was not a doctor, was not qualified to evaluate whether emergency room doctor's actions constituted a medical screening examination); *id.* at 884 (patient's brother's "testimony is not competent to prove his sister actually had an emergency medical condition since he is not qualified to diagnose a serious internal brain injury").  Nevertheless, we, too, will consider the entire affidavit.

We agree with the district court that the conclusory, unsupported statements in Middlebrooks' affidavit are insufficient to create a material fact issue as to whether Nydia Marshall was denied appropriate medical screening procedures, or the screening procedures provided her were different from those provided other patients with similar symptoms.  Middlebrooks' affidavit contains no description or identification of the other patients who allegedly came to the Hospital's emergency room with symptoms similar to those of Nydia Marshall, and provides no details of the kind of treatment those patients were given.  It goes without saying that such conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment. *See, e.g., Clark v. America's Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir.1997) ("Unsupported allegations or affidavit or deposition

10

testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) ("conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment"); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993) (internal quotation marks and citation omitted) (summary judgment is appropriate if "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation").

As a result, and in the light of the summary judgment record, because there is no material fact issue as to whether Dr. Horowitz conducted an appropriate medical screening examination or as to his determination that Nydia Marshall did not have an emergency medical condition, the Hospital was entitled to judgment, as a matter of law, that it did not have a duty under EMTALA to provide further medical treatment, to stabilize her condition prior to discharge, or to transfer her to another facility. *See* 42 U.S.C. § 1395dd(b)(1); *see also Summers,* 91 F.3d at 1140 (duty to stabilize does not arise unless hospital has "actual knowledge of the individual's unstabilized emergency medical condition"); *Vickers,* 78 F.3d at 145 (EMTALA "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware"); *Eberhardt,* 62 F.3d at 1259 ("the hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical

11

condition"); *Urban,* 43 F.3d at 526 ("The statute's stabilization and transfer requirements do not apply until the hospital determines the individual has an emergency medical condition."); *Gatewood,* 933 F.2d at 1041 (internal quotation marks and citation omitted) (stabilization and transfer provisions of EMTALA "are triggered only after a hospital determines that an individual has an emergency medical condition"); *Cleland,* 917 F.2d at 271 n. 2 (hospital has no duty under EMTALA to stabilize condition that was not ascertained in appropriate screening examination).

### III.

For the foregoing reasons, the summary judgment is

*AFFIRMED.*