**CRONUS OFFSHORE, INC., Plaintiff,**

**v.**

**KERR McGEE OIL & GAS CORPORATION, Kerr McGee Corporation and Kerr McGee Worldwide Corporation, Defendants.**

**No. 1:02–CV–565.**

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 9, 2004.

---

Thomas J. Kerr of Bradford Koenig
Shepperd and Kerr, Houston, TX, for
Plaintiffs.

Allen D. Cummings, Michael Thomas Powell and Kirk Lane Worley of Haynes & Boone, Houston, TX, for Defendants.

### MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the Court is Defendants Kerr McGee Oil & Gas Corporation, Kerr McGee Corporation, and Kerr McGee Worldwide Corporation's (collectively "Kerr McGee") Motion for Summary Judgment (# 29). Kerr McGee seeks summary judgment on Plaintiff Cronus Offshore, Inc.'s ("Cronus") action alleging claims for breach of contract, fraud, fraudulent inducement to contract, and breach of implied warranties. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the Court is of the opinion that summary judgment is warranted.

#### I. *Background*

On or about July 31, 2000, Cronus and Kerr McGee executed a Purchase and Sale Agreement ("the Purchase Agreement") under which Kerr McGee transferred to Cronus its interest in the High Island A–9 offshore oil and gas lease ("the Lease"). Cronus assumed all obligations related to the Lease and agreed to plug and abandon all wells located on the Lease. As part of the transaction, Kerr McGee paid Cronus $175,000.00 toward any abandonment costs.

Prior to the closing, Cronus performed a due diligence review of the documentation provided by Kerr McGee, including AIDC (Association of Independent Drilling Contractors) reports, well logs, and well-bore schematics. Representatives of Cronus also visited the site and inspected the offshore platform. Subsequently, while conducting drilling operations on Well No. A–1, Cronus struck an area of undrillable material in the well bore above its target zone. As a result of the obstruction, Cronus was unable to complete the well and abandoned the project.

Cronus instituted this lawsuit against Kerr McGee in August 2003, alleging claims for breach of contract, fraud, fraudulent inducement to contract, and breach of implied warranties. While Cronus asserts various causes of action, its claims all stem from the contention that Kerr McGee wrongfully failed to disclose the existence of an obstruction in Well No. A–1 and, had it done so, Cronus would not have purchased the Lease. Kerr McGee maintains that, under the Purchase Agreement, Cronus disclaimed all implied warranties and waived reliance on any alleged representations or omissions by Kerr McGee as to the condition of the Lease.

Section V of the Purchase Agreement, entitled "Seller's Representations," contains a disclaimer and waiver provision, printed in all capital letters, which states:

(j) THE EXPRESS REPRESENTATIONS OF SELLER CONTAINED IN THIS AGREEMENT ARE EXCLUSIVE AND ARE IN LIEU OF ANY OTHER REPRESENTATIONS OR WARRANTIES. SELLER EXPRESSLY DISCLAIMS AND NEGATES AND PURCHASER HEREBY WAIVES, ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THE QUALITY, QUANTITY OR VOLUME OF RESERVES, OIL, GAS OR OTHER HYDROCARBONS, IF ANY, IN OR UNDER THE LEASES; THE ENVIRONMENTAL CONDITION, EITHER SURFACE OR SUBSURFACE, OR OTHER CONDITION OF THE ASSETS; OR THE OWNERSHIP OR OPERATION OF THE ASSETS OR ANY PART THEREFOR (EXCEPT FOR A LIMITED WARRANTY AS TO SELLER'S TITLE AS SET FORTH IN ARTICLE V(f) ABOVE). SELLER DOES NOT

MAKE OR PROVIDE, AND PUR-CHASER HEREBY WAIVES, ANY WARRANTY OR REPRESENTA-TION, EXPRESS OR IMPLIED, AS TO THE QUALITY, MERCHANTA-BILITY, FITNESS FOR A PARTICU-LAR PURPOSE, CONFORMITY TO SAMPLES, OR CONDITION OF THE ASSETS OR ANY PART THEREOF. SELLER DISCLAIMS AND NE-GATES, AND PURCHASER HERE-BY WAIVES, ALL OTHER REPRE-SENTATIONS AND WARRANTIES, EXPRESS, IMPLIED OR STATUTO-RY. THE PERSONAL PROPERTY, EQUIPMENT, IMPROVEMENTS, FIXTURES AND APPURTENANCES CONVEYED AS PART OF THE AS-SETS ARE SOLD AND PURCHASER ACCEPTS SAME "AS IS, WITH ALL FAULTS".

In addition, Section VII of the Purchase Agreement, entitled "Property Review," printed in part in capital letters, provides for an independent investigation of the Lease by the Purchaser:

(a) Seller has allowed Purchaser physical access, at Purchaser's sole risk and subject to the indemnities set forth in this Article VII(a), to inspect the As-sets and further access to review, at Seller's office in Houston, Texas, the documents listed in Article XIII (a) which relate to the Assets. Purchaser shall indemnify, release, defend and hold Seller, its agents, officers and employ-ees, harmless from and against any and all claims, damages, liabilities, judg-ments, costs and expenses (including at-torneys' fees and court costs) of every kind and character, including without limitation personal injury or death to any person or property damage, result-ing from or arising out of Purchaser's activities conducted during the inspec-tions undertaken by Purchaser pursuant to this Article VII(a), regardless of any claimed negligence, in whole or in part,

attributable to Seller or other indemni-fied party. Seller shall not be obligated to perform any title work and shall not be required to update or supplement abstracts or title opinions. PURCHAS-ER ACKNOWLEDGES THAT SELL-ER HAS MADE NO REPRESENTA-TIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETE-NESS OF SUCH INFORMATION OR AS TO ITS TITLE TO THE ASSETS (EXCEPT FOR A LIMITED WAR-RANTY AS TO SELLER'S TITLE AS SET FORTH IN ARTICLE V(f) ABOVE), AND IN ENTERING INTO AND PERFORMING THIS AGREE-MENT, PURCHASER HAS RELIED AND WILL RELY SOLELY UPON ITS INDEPENDENT INVESTIGA-TION OF AND JUDGMENT WITH RESPECT TO THE ASSETS, THEIR VALUE, AND SELLER'S TITLE THERETO.

The Purchase Agreement, in Section XIV, further calls for the application of Texas law and also contains a merger clause, which reads:

(o) This Agreement constitutes the entire agreement between Seller and Purchaser with respect to the transac-tions contemplated herein, and super-sedes all prior oral or written agree-ments, commitments, understandings, or information otherwise furnished by Sell-er to Purchaser with respect to such matters. No amendment shall be bind-ing unless in writing and signed by rep-resentatives of both parties.

Kerr McGee asserts that the foregoing provisions preclude any recovery by Cro-nus in this action.

II. *Analysis*

A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321 (5th Cir.1998). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing,* 185 F.3d at 505; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321–22; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving

any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston,* 337 F.3d 539, 540 (5th Cir.2003); *Harken Exploration Co.,* 261 F.3d at 471; *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321. The evidence of the non-movant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Martinez,* 338 F.3d at 411; *Harken Exploration Co.,* 261 F.3d at 471; *Christopher Vill. Ltd. P'ship v. Retsinas,* 190 F.3d 310, 314 (5th Cir.1999); *Merritt–Campbell, Inc.,* 164 F.3d at 961; *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998); *Marshall,* 134 F.3d at 321. The evidence is construed "in favor of the non-moving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999); *accord Little,* 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," concluso-ry allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999); *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 540; *see Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. Texas Lottery,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Breach of Contract*

Cronus alleges that Kerr McGee breached the Purchase Agreement by failing to reveal material facts concerning the presence of undrillable material in the well bore during the course of contract negotia-

tions and by breaching an implied duty of good faith and fair dealing. Kerr McGee contends that Cronus fails to state a claim for breach of contract as a matter of law and that no duty of good faith or fair dealing arises in this context.

 "Under Texas law, '[t]he essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.'" *Bridgmon*, 325 F.3d at 577 (quoting *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex.App.—Houston [14th Dist.] 2000, no pet.)); *accord Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 491 (N.D.Tex.), *aff'd*, 51 Fed. Appx. 482, 2002 WL 31319307 (5th Cir.2002); *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform. *See Dorsett*, 106 S.W.3d at 217; *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.*, 826 S.W.2d 638, 640 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex.App.—Dallas 1991, writ denied); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

 In this instance, Cronus has presented no evidence that Kerr McGee failed or refused to do an act it had promised to perform. Instead, the thrust of Cronus's complaint is that Kerr McGee failed to disclose material information about the presence of an obstruction in the well bore of Well No. A–1. The issue is one of purported fraud, not breach of contract. As Judge Clark recognized in his Memorandum and Order signed July 17, 2003, "Technically, this is not a breach of contract claim but a claim of fraud. If plaintiff intends to pursue a breach of contract claim, it should plead one." Now, six months later, Cronus still has not pleaded a viable breach of contract claim.

 Moreover, in Texas, "[t]here is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions." *Formosa Plastics Corp. USA v. Presidio Engr's & Contractors*, 960 S.W.2d 41, 52 (Tex.1998); *accord El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312–13 (Tex.1999); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). Where, as here, no special relationship exists, there is no common law duty between parties to a contract to act in good faith. *See El Paso Natural Gas Co.*, 8 S.W.3d at 312–13; *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex.1994). Moreover, in cases governed by the Uniform Commercial Code, in which a statutory obligation of good faith is imposed, the duty does not extend to the formation of contracts. *See El Paso Natural Gas Co.*, 8 S.W.3d at 313 (citing *Tolbert v. First Nat'l Bank of Oregon*, 312 Or. 485, 823 P.2d 965, 969 (1991)). Hence, under these circumstances, Cronus cannot rely on an implied duty of good faith and fair dealing to resurrect its breach of contract claim.

### C. Breach of Implied Warranties

Cronus further asserts that Kerr McGee's failure to disclose material facts concerning the condition of the well constitutes a breach of the implied warranty of fitness and the implied warranty of merchantability. Kerr McGee maintains that Cronus waived its claims for breach of implied warranties through explicit language in the disclaimer and waiver clause.

 Unlike express warranties, which are imposed by agreement of the parties to a contract, implied warranties are created by operation of law and are grounded

more in tort than in contract. *See La Sara Grain v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984). Implied warranties are derived primarily from statute, although some have their origin at common law. *See id.* Implied warranty claims arise by operation of law for any sale of goods in Texas. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 353 (Tex.1987) (citing *La Sara Grain,* 673 S.W.2d at 565; *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968)). Chapter 2 of the Texas Business and Commerce Code establishes three implied warranties in sales transactions: (1) the warranty of title; (2) the warranty of merchantability; and (3) the warranty of fitness for a particular purpose. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 438 n. 2 (Tex.1995) (citing TEX. BUS. & COM. CODE ANN. §§ 2.312, 2.314, 2.315). Liability under the latter two provisions depends on a finding that the goods are defective, meaning that they are unfit for the ordinary purpose for which they are used because of a lack of something necessary for adequacy. *See Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989).

■ Although it is not entirely clear what, if any, implied warranties arise in this situation, it is well established under Texas law that implied warranties can be expressly disclaimed. *See Alcan Aluminum Corp.,* 133 F.Supp.2d at 497 (citing TEX. BUS. & COM. CODE ANN. § 2.316). Such disclaimers must be in writing and conspicuous. *See id.* "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." *Arkwright–Boston Mfgrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1183 (5th Cir.1988). Section 1.201(b)(10) of the Texas Business and Commerce Code defines "conspicuous," as follows:

(10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

TEX. BUS. & COM. CODE ANN. § 1.201(b)(10). The foregoing is not an exhaustive list, but merely illustrates that "the test is whether attention can reasonably be expected to be called to it." *Alcan Aluminum Corp.,* 133 F.Supp.2d at 497. "This is an objective, rather than subjective, standard to be determined by the court as a question of law." *Id.* (citing *Cate v. Dover Corp.,* 790 S.W.2d 559, 560 (Tex.1990)).

■ In the case at bar, the waiver provision is prominently displayed in all capital letters, setting it apart from the body of the Purchase Agreement, and is positioned logically in the section entitled "Seller's Representations." Hence, it is sufficiently obvious that a reasonable person ought to have noticed it. *See Arkwright–Boston Mfgrs. Mut. Ins. Co.,* 844 F.2d at 1183; *Alcan Aluminum Corp.,* 133 F.Supp.2d at 498. Moreover, the provision explicitly references and disclaims the implied warranties of merchantability and fitness for a particular purpose. In addition, it is incorporated in a commercial contract between sophisticated business entities, who were represented by counsel through-

out the process. Indeed, Cronus acknowledges in Section XIV (k) of the Purchase Agreement, which references the Texas Deceptive Trade Practices Act, that "Purchaser is not in a significantly disparate bargaining position in regard to this Agreement and the sale contemplated herein and that Purchaser has voluntarily consented to this waiver after consultation with an attorney of Purchaser's own selection."

Lauren Sparks ("Sparks"), the principal contract negotiator for Cronus, testified at deposition that she read the Purchase Agreement before closing on the transaction, understood and agreed to all its terms, and discussed the terms with Cronus's attorney before the closing. Under these circumstances, the Court finds that the disclaimer and waiver provision of the Purchase Agreement is "conspicuous" and serves to foreclose Cronus's claim for breach of implied warranties.

### D. *Fraud and Fraudulent Inducement of Contract*

Cronus claims that Kerr McGee's nondisclosure of the presence of undrillable material in the well bore is fraud as that term is defined under Texas law. Cronus further alleges that Kerr McGee's failure to disclose material facts concerning the condition of the well constitutes fraudulent inducement of the contract, causing it to purchase the property at less favorable terms than it otherwise would have negotiated. Cronus contends that had it been aware of the actual condition of the well, contract negotiations would have been significantly different. Kerr McGee maintains that Cronus waived its claims for fraud and fraudulent inducement when it agreed to the disclaimer and waiver provision of the Purchase Agreement. Kerr McGee also points to the "as is" clause, contending that it negates the element of causation necessary to pursue a fraud claim.

In Texas, fraud consists of an affirmative misrepresentation or, in certain circumstances, the concealment of a material fact. To recover for fraud in the context of a positive representation, the plaintiff must establish that:

(1) the defendant made a material representation concerning an existing fact;

(2) the representation was false when it was made;

(3) the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4) the speaker made the misrepresentation with the intent that it should be acted upon;

(5) the plaintiff acted with justifiable reliance on the misrepresentation; and

(6) the plaintiff suffered injury as a result.

See *Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir.2003); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir.2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir.), *cert. denied*, 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998); *Formosa Plastics Corp. USA*, 960 S.W.2d at 47. "Fraud is never presumed, and it is plaintiff's burden to allege and prove actionable fraud." *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex.Civ.App.—Corpus Christi 1979, no writ). Here, Cronus does not allege and has not demonstrated that Kerr McGee made any affirmative misrepresentations of fact concerning the transaction at issue. See *Staples v. Merck & Co., Inc.*, 270 F.Supp.2d 833, 844 (N.D.Tex.2003). Rath-

er, Cronus's fraud claim rests entirely on a theory of fraudulent concealment.

■ Fraud by nondisclosure arises when a party with a duty to disclose facts fails to do so. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 181 (Tex.1997). Fraudulent concealment as an affirmative cause of action includes the following elements:

(1) a party conceals or fails to disclose a material fact within the knowledge of that party;

(2) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

(3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and

(4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*See Alcan Aluminum Corp.,* 133 F.Supp.2d at 498; *Bradford v. Vento,* 48 S.W.3d 749, 754–55 (Tex.2001); *Hoggett v. Brown,* 971 S.W.2d 472, 486 (Tex.App.—Houston [14th Dist.] 1997, pet. denied); *see also Custom Leasing, Inc. v. Texas Bank & Trust Co.,* 516 S.W.2d 138, 142 (Tex.1974).

■ For there to be actionable fraud based on nondisclosure, there must be a duty to disclose the information. *See Alcan Aluminum Corp.,* 133 F.Supp.2d at 498; *Bradford,* 48 S.W.3d at 755; *Insurance Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); *Hoggett,* 971 S.W.2d at 487–88. "Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Bradford,* 48 S.W.3d at 755 (citing *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 353 (Tex.1995)). Whether such a duty exists is a question of law. *See id.; Hoggett,* 971 S.W.2d at 487–88; *Ralston Purina Co. v. McKendrick,*

850 S.W.2d 629, 633 (Tex.App.—San Antonio 1993, writ denied). A duty to disclose "may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Alcan Aluminum Corp.,* 133 F.Supp.2d at 498–99; *accord Hoggett,* 971 S.W.2d at 487; *Ralston Purina Co.,* 850 S.W.2d at 635–36.

■ A seller of real estate may commit fraud without actually making an affirmative misrepresentation, if the seller fails to disclose material facts which would not have been discoverable by a purchaser exercising ordinary care and diligence, or which could not be uncovered by a reasonable investigation and inquiry. *See Smith v. National Resort Cmtys., Inc.,* 585 S.W.2d 655, 658 (Tex.1979); *Tovar v. Etla Trust,* No. 13–00–758–CV, 2002 WL 253838, at *4 (Tex.App.—Corpus Christi Feb.21, 2002, no pet.) (not designated for publication). Nevertheless, "a seller has no duty to disclose facts he does not know." *Prudential Ins. Co. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 162 (Tex. 1995) (citing *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982)); *accord Tovar,* 2002 WL 253838, at *4. "Nor is a seller liable for failing to disclose what he only should have known." *Prudential Ins. Co.,* 896 S.W.2d at 162 (citing *Ozuna v. Delaney Realty, Inc.,* 600 S.W.2d 780, 782 (Tex.1980)); *accord Tovar,* 2002 WL 253838, at *4.

■ In this instance, while Cronus complains repeatedly of Kerr McGee's failure to disclose the existence of an obstruction in the well bore, it adduces no evidence that Kerr McGee was aware of the

presence of such undrillable material. Although Sparks testified that Kerr McGee should have known of the obstruction by virtue of its position as the operator of the Lease, she gave no indication, nor does Cronus make any showing, that Kerr McGee, in fact, knew of its existence. Moreover, she could not identify any documents withheld by Cronus that would have revealed such impediment. Thus, in the absence of evidence that Kerr McGee was aware of the obstruction and failed to disclose it, Cronus's fraudulent concealment claim is based purely on surmise and conjecture, which is insufficient as a matter of law. *See Alcan Aluminum Corp.,* 133 F.Supp.2d at 500–01; *Prudential Ins. Co.,* 896 S.W.2d at 163; *Tovar,* 2002 WL 253838, at *4.

■ Furthermore, through the disclaimer and waiver provisions, Kerr McGee disclaimed and Cronus waived reliance on any representations or warranties made by Kerr McGee with regard to the condition of the assets. In addition, Kerr McGee sold and Cronus accepted the property and the appurtenances thereto "as is with all faults." Moreover, in the property review clause, Cronus represented that in entering into and performing the Purchase Agreement, it had relied solely on its own independent investigation and judgment with respect to the assets and their value. Finally, in the merger clause, the parties agreed that the Purchase Agreement constituted the entire agreement with respect to the transactions described and it superseded any prior oral or written agreements or information furnished by Kerr McGee to Cronus.

Texas courts have, on numerous occasions, recognized the validity and enforceability of such exculpatory clauses when faced with allegations of fraudulent misrepresentation and/or fraudulent concealment. *See, e.g., Armstrong v. American Home Shield Corp.,* 333 F.3d 566, 571 (5th Cir.2003); *U.S. Quest Ltd. v. Kimmons,* 228 F.3d 399, 405 (5th Cir.2000); *Schlumberger Tech. Corp.,* 959 S.W.2d at 181; *Prudential Ins. Co.,* 896 S.W.2d at 163; *Bynum v. Prudential Residential Servs. Ltd. P'Ship,* No. 01–02–00747–CV, 2003 WL 22456111, at *3–6 (Tex.App.—Houston [1st Dist.] Oct.30, 2003, no pet. h.); *Tovar,* 2002 WL 253838, at *5; *1900 SJ, Inc. v. Washington Nat'l Ins. Co.,* No. 01–97–00493–CV, 1998 WL 386407, at *5 (Tex. App.—Houston [1st Dist.] May 21, 1998, pet. denied) (not designated for publication). In *Schlumberger Tech. Corp.,* the Texas Supreme Court held that where, as here, a disclaimer of reliance in a contract is negotiated by parties of equal bargaining strength in an arm's length transaction, it is binding upon the parties and, as a matter of law, precludes claims of both fraudulent inducement and nondisclosure. *See* 959 S.W.2d at 179–81. The court recognized that alleged nondisclosures are merely the converse of misrepresentations and are subsumed under any contract language disclaiming reliance on affirmative statements. *See id.* at 181. Hence, the disclaimer and waiver provisions of the Purchase Agreement serve to vitiate Cronus's fraud and nondisclosure claims.

■ Similarly, in *Prudential Ins. Co.,* the Texas Supreme Court held that an agreement to buy property "as is" prevents a buyer from proving that the seller's conduct caused him any harm. *See* 896 S.W.2d at 161. "By agreeing to purchase something 'as is', a buyer agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong." *Id.* (citing *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.,* 572 S.W.2d 308, 313 (Tex.1978)). "The seller gives no assurances, express or implied, concerning the value or condition of the thing sold." *Id.* Hence, "[a] valid 'as is' agreement, like the one in this case, pre-

vents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid." *Id.* The Court explained:

> The sole cause of a buyer's injury in such circumstances, by his own admission, is the buyer himself. He has agreed to take the full risk of determining the value of the purchase. He is not obliged to do so; he could insist instead that the seller assume part or all of that risk by obtaining warranties to the desired effect. If the seller is willing to give such assurances, however, he will ordinarily insist upon additional compensation. Rather than pay more, a buyer may choose to rely entirely upon his own determination of the condition and value of his purchase. In making this choice, he removes the possibility that the seller's conduct will cause him damage.

*Id.*

In this instance, by agreeing to the "as is" clause, Cronus accepted the risk that the A–1 well could be worth less than anticipated, and it cannot now obtain relief from its own bargain. Cronus has established no compelling factors allowing it to disavow the effect of the "as is" clause, such as the seller's fraudulent concealment of the condition of the assets or its impairment of inspection of the property. *See Prudential Ins. Co.*, 896 S.W.2d at 162; *1900 SJ, Inc.*, 1998 WL 386407, at *4. As discussed above, Cronus has not shown fraudulent concealment because it has not demonstrated actual awareness on the part of Kerr McGee of the existence of undrillable material in the well bore. *See Bradford*, 48 S.W.3d at 755; *Prudential Ins. Co.*, 896 S.W.2d at 162; *Bynum*, 2003 WL 22456111, at *5. Cronus also has not shown that Kerr McGee interfered with its inspection of the property. While the well bore may not have been visible, that was not attributable to any action on the part of Kerr McGee; rather, the inherent nature of offshore drilling operations pre-

cludes a physical inspection of such a location. Therefore, under the totality of the circumstances, Kerr McGee cannot be held liable under a theory of either fraudulent misrepresentation or fraudulent concealment based upon its alleged nondisclosure of an obstacle in the well bore.

### III. *Conclusion*

Accordingly, Kerr McGee's motion for summary judgment is GRANTED. There exist no outstanding issues of material fact with regard to Cronus's breach of contract, breach of implied warranty, or fraudulent inducement/fraudulent concealment claims arising from its purchase of Kerr McGee's interest in the Lease. Consequently, Kerr McGee is entitled to judgment as a matter of law.

IT IS SO ORDERED.