BLD-137                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4033
_____

WILLIAM F. BYRNE, ON HIS OWN BEHALF
AND FOR THOSE SIMILARLY SITUATED

v.

THE CLEVELAND CLINIC;
CHESTER COUNTY HOSPITAL

William Byrne,
                                  Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 09-cv-00889)
District Judge:  Honorable Gene E.K. Pratter
_____

Submitted for Possible Summary Action Pursuant to
Third Circuit LAR 27.4 and I.O.P. 10.6
February 28, 2013

Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: March 19, 2013)
_____

OPINION
_____

PER CURIAM

        Pro se appellant, William Byrne, entered the emergency department of Chester

County Hospital in West Chester, Pennsylvania, around 5:00 p.m. on February 15, 2007, experiencing chest pains and shortness of breath. Within 20 minutes of his arrival, emergency department personnel drew blood and requested an EKG. A chest x-ray was performed approximately 30 minutes later. According to Byrne, it took several hours before he was actually examined by the emergency department physician. That examination was followed by a visit from a cardiologist, Dr. Lewis, who presented Byrne with the choice of having a "clot busting drug" administered or having a stent put in place through a "catheterization procedure." On Dr. Lewis' recommendation, Byrne opted for the catheterization. The procedure was performed that same evening at Chester County Hospital and concluded around 11:30 p.m.

Byrne filed a complaint against The Cleveland Clinic ("Clinic") and Chester County Hospital ("Hospital") on March 12, 2012, which he subsequently amended on April 22, 2009. In his amended complaint, Byrne set forth claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, as well as a claim for breach of implied contract under Pennsylvania law. Byrne asserted that the Clinic and the Hospital (acting as an agent and/or representative of the Clinic) "entered into an implied contract" with him and the public providing that a stent procedure would be conducted within 90 minutes or less from the time that a person enters into an emergency room. Byrne alleged that, due to his delayed treatment, the Hospital breached that contractual agreement. He thus sought to hold defendants liable for the resulting heart damage and mental duress he allegedly suffered.

2

Defendants moved separately to dismiss Byrne's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The District Court granted those motions in part, and denied them in part. Recognizing that EMTALA was "not intended to create a federal malpractice statute or cover cases of hospital negligence," see D. Ct. Mem. Op. entered 2/5/10 at 11 (quoting Torretti v. Main Line Hosps., Inc., 580 F.3d 168, 178 (3d Cir. 2009)), the District Court noted that the statute "simply 'requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner.'" Id. (quoting Torretti, 580 F.3d at 173).

While the allegations in Byrne's amended complaint were found sufficient to withstand defendants' motion to dismiss with respect to a cause of action under EMTALA's screening provision, the District Court determined that the allegations did not provide a basis for a stabilization claim since Byrne did not allege that he was transferred or discharged from the Hospital prior to receiving the catheterization procedure and being stabilized. Byrne's breach of implied contract claim fared no better insofar as a claim based on an alleged delay in treatment – as opposed to the treatment or specific result itself – is not an actionable claim under Pennsylvania law. The court concluded that further amendment of his complaint would be futile, and thus dismissed Byrne's stabilization and breach of implied contract claims with prejudice.

A substantial period of discovery ensued, and both defendants filed motions for summary judgment. Having determined that the screening duties imposed by 42 U.S.C. § 1395dd(a) are only triggered if a patient seeks treatment from a participating hospital, and

3

that Byrne never physically entered the Clinic in Cleveland, Ohio, nor did he request treatment from the Clinic, the District Court granted the Clinic's motion and entered judgment in its favor. The court further determined that Byrne's documentary evidence contained no indicia of a principal-agent relationship between the two establishments, and that the affiliation between the Hospital and the Clinic was merely associative in nature and limited to the Hospital's Cardiac Surgery Program (not the emergency department). The court thus concluded that Byrne's documentary submissions "cannot provide a sufficient evidentiary basis on which a reasonable jury could find that the 'affiliation' relationship between the Hospital and the Clinic is one that could impute liability to the Clinic for the Hospital's alleged screening violation." See D. Ct. Mem. Op. entered 3/31/11 at 7.

Summary judgment was likewise subsequently found to be warranted in favor of the Hospital. In accordance with 42 U.S.C. § 1395dd(a), the District Court initially noted that "EMTALA imposes screening obligations that require a hospital's emergency department to provide 'an appropriate medical screening examination within the capability of the hospital's emergency department … to determine whether or not an emergency medical condition … exists.'" See D. Ct. Mem. Op. entered 9/19/12 at 5. The court thereafter determined that the record evidence demonstrated that the Hospital applied the two policies it had in place governing the screening of emergency room patients who complained of chest pain to Byrne, and that he did, in fact, receive similar treatment in comparison to other persons who came to the Hospital's emergency

4

department complaining of chest pain. Moreover, that screening procedure was not found to be so cursory as to allow Byrne to prevail on his EMTALA's screening claim. Judgment was accordingly entered in favor of the Hospital. Byrne timely appealed the District Court's entry of summary judgment in favor of the Hospital.

We have jurisdiction under 28 U.S.C. § 1291, and our review is plenary. See Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010) (plenary review of orders granting summary judgment). Summary judgment is granted when viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001). We may summarily affirm the District Court's judgment if the appeal fails to present a substantial question. See LAR 27.4; I.O.P. 10.6.

The District Court properly granted summary judgment on Byrne's cause of action under EMTALA's screening provision. "Congress enacted EMTALA in the mid-1980s based on concerns that, due to economic constraints, hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions." Torretti, 580 F.3d at 173. EMTALA requires hospitals to provide appropriate medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner. Id. As the Eighth Circuit Court of Appeals stated, "[p]atients are entitled under EMTALA, not to correct or non-negligent treatment in all circumstances, but to be treated as other similarly situated patients are treated within the hospital's capabilities. It

5

is up to the hospital itself to determine what its screening procedures will be. Having done so, it must apply them alike to all patients." Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1138 (8th Cir. 1996).

The District Court correctly noted that EMTALA does not define what constitutes "appropriate medical screening," and we have not had occasion to specifically address the issue. What is clear, however, is that EMTALA does not create a federal cause of action for malpractice. The statute was aimed at disparate patient treatment and "[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice." Torretti, 580 F.3d at 173-74 (citing Summers, 91 F.3d at 1137). While we find it unnecessary in the instant appeal to embark on an exhaustive analysis of what constitutes an "appropriate medical screening" under EMTALA, we note our agreement with the District Court's determination that the record evidence demonstrates that the Chester County Hospital's screening examination is not so cursory that it would fail "to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury." See D. Ct. Mem. Op. entered 9/19/12 at 7 (quoting Jackson v. E. Bay Hosp., 246 F.3d 1248, 1256 (9th Cir. 2001)).

The Hospital had two policies in place to govern the screening of persons arriving in the emergency department with complaints of chest pain and those policies were administered to Byrne indiscriminately. Having presented himself at the emergency department of the Hospital, emergency personnel provided Byrne with a physical exam,

6

obtained his medical history, and administered an EKG, cardiac work-up and chest x-rays. The record evidence demonstrated that the Hospital applied its screening policies uniformly at the time Byrne sought care. See Marshall ex rel. Marshall v. E. Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 323 (5th Cir. 1998) (Noting that most courts have defined an "appropriate medical screening examination" as "a screening examination that the hospital would have offered to any other patient in a similar condition with similar symptoms."). Insofar as Byrne did not raise a genuine issue of material fact on the issue of whether the Hospital failed to follow the two policies it has in place in screening him, the District Court did not err in granting summary judgment.[1]

For the foregoing reasons, we will summarily affirm the District Court's judgment.

---

[1] Byrne limits his challenge to the District Court's grant of summary judgment in favor of the Hospital on his EMTALA screening claim. See Appellant's Informal Br. attached to Notice of Appeal. We would nonetheless have affirmed the determinations set forth in the orders entered on 2/8/10 and 3/31/11 as well for essentially the same reasons set forth by the District Court.